Good afternoon, Your Honor. May it please the Court, Counsel, I'm Tom Corrales with the Office of the State Appellate Defender, here representing Howard Ellis. Mr. Ellis was convicted of armed robbery with a firearm, home invasion, aggravated battery with a firearm, and unlawful possession of a weapon by a felon. And his aggregate sentence for those convictions is 65 years. He is also subject to the 85% good time calculation. One of the 10-year terms is subject to 50% good time, but that's a concurrent sentence, so he is subject to 85% on the aggregate of 65 years. I've raised a claim in the third issue of the opening briefs about the use of the 85% calculation for the sentence for home invasion in Count 3, and I hope to touch on that by the end of my argument. But aside from the sentencing issue, we raised three issues in which the defendant is seeking a new trial. The first argument in the brief is that the defendant was denied a continuance by the judge and it should have been allowed before the trial began. I've also raised an argument based on plain error that the prosecutor injected error into the trial during closing arguments. And then in the supplemental brief, we've requested a new trial which relates to the trial judge's denial of a request for the witness-accomplice instruction, and that's a preserved issue. I intend to start with the supplemental issue on the jury instruction and then cover the denial of the continuance before, if I have time, I reach the statutory construction argument, which is at the heart of the 85% sentencing issue. Now, Erin Osborne was the witness who started the police onto my client's trail, and she is the witness for whom the defense sought a witness-accomplice instruction at this trial. In our supplemental briefs, the state is now recognizing that there actually was cause for a charge to have been pursued against Erin under the common design prong of the accountability law. So we have a concession that IPI 3.17 was improperly denied by the judge here. Because in the trial court, the judge and the prosecutor believe that Erin could not have been prosecuted as an accomplice unless there was a showing that she was a participant in the charged crimes, the crimes which were charged against my client. But that's not true when you have a common design theory of accountability. Now the question remains is whether the accomplice instruction could have given the jury reason to not return guilty verdicts. And that instruction tells the jury, we'll just plug in Erin for the witness, that you view the testimony of Erin subject to suspicion and considered with caution. But Erin, she was the most damaging witness. She was the witness who started the police on my client's trail, and she was the one that would have been the hardest for the jury to ignore. In fact, it's entirely possible that during deliberations the jury might have said, well we weren't too impressed with the testimony of Carl Griffin, who they called KG, or Darren Thompson, or the owner of the home, Christine, but there's nothing to hurt the testimony of Erin Osborne. If that happened, then the accomplice instruction could have made a difference during the deliberations. And it's the state's burden to show that this was a harmless error in this case. It was a preserved issue. So it really is incumbent on the state to show that the jury would not have reached a different result had they had IPI 3.17 in this case. Now the second issue that was preserved in the trial court, and under which we are asking for a new trial, is the denial of the continuance request on December 3rd of 2012, which was a request for a short continuance in order to secure the presence of family members who were living in Chicago, who the defense wanted to call to testify as alibi witnesses. If it hurt the defendant's chances at an acquittal to not have an accomplice instruction given with respect to Erin Osborne, it was even more devastating to not be able to have any of the family members appear to testify that the defendant was an inferior on the morning in January of 2012 when this crime occurred. Now I know this is an issue that is subject to an abuse of discretion standard of review. But if you look at all the factors which should have come into play in considering the request for a continuance, which include the seriousness of the charges, the fact that counsel was only seeking a short continuance, and the importance of the defense having the right to develop their defense, I think you would find that the judge disagreed. He didn't properly apply his discretion. What appears from the transcripts is that the judge was more concerned with docket management, and that is one of the factors that comes into play in considering a continuance request, as is the history of the case. But there was not a lengthy pattern of drawing this trial out at the time that the December 3rd request for a short continuance was requested. And docket management shouldn't be the number one most important factor to consider. The reason I say it appears that that was more on the judge's mind in this case was when he made a comment at Record 74 that he would be willing to consider extending the date of the trial if the other case that was potentially going to be ready to start a trial were to surface later in that day. So that indicates my view that the court was just not willing to lose the use of that day in court, and that's really not a proper balancing of the factors. So let's look at docket management. It's an interesting concept. So how does that cut for you? I mean, is that positive consideration that the trial department did in making the decision on continuances? In what way are you using positive? I mean, how can I put it? It's hard to find the right word. Beneficial? Yeah. I mean, is that a legitimate concern? Yeah, that's the way I would put it. Is it a legitimate factor to consider by the trial department? It certainly is. It's named in Walker, and I'm using Walker more than the Ward case, which is in both of our briefs, because Walker kind of expands on the factors. It is a legitimate concern, but I think it's sort of tied to another expressed factor, which is history of the case. When I look at the court's ability to control and manage its docket... Why is it considered a legitimate concern from your perspective? Is it discussed, or is it just thrown in as a list, so to speak? By the Supreme Court in terms of what should be considered? Yes. Well, that's an interesting question, too. It may be a throw-in because of the pressures on our court system. It may be a concession to the pressures. But from a defendant with serious charges, which to me puts a whole different look at the balancing picture here, maybe you've got a traffic offense and you don't want to just have a guy ask for the fourth continuance when an officer has been making it to court each of the previous times. That's why I think history of the case and docket management are sort of tied at the hip. The court has an ability to not let this go on. But in terms of just, hey, we have a lot of cases on our docket and we just can't afford to lose a day because now other terms, speedy trial terms, are running and whatnot, I think it's maybe a concession to the busyness of the courts. But when I say it's legitimate, I am saying the Supreme Court has said it's legitimate. True. Was this the first continuance that defendant requested? No. Was there an alibi witness? No, it was not. And then in the two months after the first continuance, did they subpoena those alibi witnesses? That was not done. And there was sort of a mea culpa to that by Mr. Woelfel, who was counsel and thought that he could rely on family members to not need the pressures of a subpoena. But he offered to do the subpoenas and get them right within a short period of time. And I think if you look at the Walker decision, you'll also see that, you know, who's suffering from this? I mean, I haven't raised this as an incompetent or ineffective assistance, but the point from Walker, one of the factors is it's the defendant who is suffering. It's not an ARDC beef against the attorney for not having subpoenaed. And so, you know, it's difficult in cases where it's maybe somewhat laxical for counsel to not have done the right thing and subpoenaed them from the start. But the defendant here shouldn't be made to suffer. He's not the one that issues subpoenas and goes through the process of sending bus fare up to his family from the county jail. So, yes, that is a hurtful factor for us, but it's attorneys. The attorney is the one that waited too long to get tough with these family members. And so both of those issues have different prejudicial features. And if you look at them together, you kind of can imagine what a different trial this would have been with one or more of the family members to testify to what the defendant was on January 28th and an accomplice witness instruction having been given with respect to Aaron Osborne. So I'm going to move away from our new trial issues. I'd like to talk a little bit about that 85% sentencing issue, which boils down to a construction of 730 ILCS 3-6-3, which has multiple subparts, but the one that applies here is subparagraph A2 triple I, small i. Now that provision, we agree that that's the statute that has to be construed here to determine whether or not a defendant's sentence on the home invasion conviction, which pertained to Darren Thompson, should be served at 85%. And the provision has a phrase that I'm going to break into three separate parts to try and look a little closer at what the legislature intended here. The key phrase is, first, the conduct leading to a conviction. Next, for the enumerated offense. And then third, resulted in great bodily harm to a victim. The state has said there's no ambiguity in this phrase, but they're only able to do that by breaking out the middle section of that phrase. In other words, you can read it, the conduct leading to conviction resulted in great bodily harm to a victim. But what happened to for the enumerated offense, and what is the purpose of that middle term? We know that we don't just ignore words in statutes as not having been put there for a reason, so they are there to mean something. And if this provision had meant or permitted for victims and offenses to be sort of interchangeable when you're imposing sentences on multiple convictions, wouldn't the legislature have said something like for an offense instead of the enumerated offense? Now, also know that before that language in this subsection, there are multiple offenses, four or five offenses, to which this finding of great bodily harm must be made by the trial judge. So it's conceivable that the legislature said for the enumerated offense to refer backwards to whether this was an armed robbery, a home invasion, armed violence, maybe that's what they meant by the enumerated offense. But that still doesn't mean that the legislature is saying it's okay to look at a victim of one of those other enumerated offenses for which a sentence is not being imposed and just transfer that bodily harm to the offense on which the sentence is being imposed. If that was what they wanted, they could have said one of the enumerated. The conduct which resulted in one of the enumerated offenses resulted in great bodily harm. They didn't say one of or an enumerated. They said the enumerated offense. That's the last two minutes. Thank you. So our reading is by saying the enumerated offense, it's reasonable to say that the legislature intended that the victim who suffered the great bodily harm must actually be the victim of the enumerated offense. In this case, it was a home invasion where the threatened victim was Darren Thompson. Darren Thompson ran out the back door as KG was in the scuffle with the perpetrator and got shot. He did not suffer any great bodily harm. So where there's a sentence imposed for home invasion of the victim being Darren Thompson, our argument is that that's at least ambiguous, and ambiguity is resolved in favor of the defendant. You have to strictly read this to his benefit that that should not have been an 85% sentence as to the count three home invasion conviction. And so we're asking for the sentence on count three to be modified so that the defendant is considered eligible for day-for-day credit. That home invasion, which resulted in a 30-year sentence, of course, that is an alternative request for relief if you haven't concluded that the defendant should be given a new trial. Did the court articulate any findings that the victim? He did not, Your Honor. He asked the parties, and the state answered the question, are these 85%? And the prosecutor said, yes, they are, which would have actually included the unlawful possession of a weapon's conviction, and it's clear that that is not 85%. The sentencing order writes out counts two, three, six are 85%, and count seven, which is the unlawful possession of a weapon, is 50%. But there was no finding of great bodily harm as to any. He didn't articulate that finding of great bodily harm to any victim. To any. And he didn't mark any boxes on the sentencing order. Correct. And there is a box. Right, that the victim suffered great bodily harm. And after that language, the victim suffered great bodily harm, it says it has to count, and there's a colon and a blank line. So you have to fill in counts as well. It would end if the states construct. I mean, obviously we're talking about a form that's used in the circuit court, but the reading of whoever created that form is that it has to match. What is the remedy you're asking? A modification of the sentence to exclude the 85% reference has to count three. You're not requesting that we remand? No. We would just ask for the ability to earn day for day. Because that is on the sentencing order. The judge put 85% has to count three in. Right, that's in the order the judge signed. Yes, it is. So you're asking for a modification of that order? Correct, modification. The ability of it to be eligible for 85% if we found it, as you're arguing. True, so that the DOC would then make the change based on the new litmus. Any further questions? Thank you. Is there anything? Thank you. May it please the court, counsel. With respect to the IPI instruction, indeed we, based on common design, the fact that Osborne did not know what was going to happen, the fact that their original intent was to go and buy narcotics, based on current case law, it would definitely appear as though the accomplished instruction was proper and should have been given. However, the fact that that instruction should have been given does not necessarily mean that reversible error occurred. In this particular case, the error is harmless. It's harmless here because, number one, at least as I analyze the facts and the evidence, what we have here is we have three people, not Aaron Osborne, but three people. The victim was shot, Thompson and Krasner, the owner of the house. All three positively identified the defendant as the intruder. Krasner, the owner, identified him in court. The victim who was shot, the victim who was shot had, I guess you could take and see if you want to use the language of the case law, under, albeit stressful, under ideal conditions, was able to see the defendant because the defendant pointed the gun in his face. The defendant became involved in a scuffle with Griffin over the gun. Griffin had a very good look at who shot him. Griffin made a photo array identification while he was in the hospital. Aaron made a positive photo identification days later. Apparently he kind of sort of semi went on the lam a bit because there was an outstanding warrant and didn't want to necessarily get involved. But he made a positive photo ID days later. In the photo array, the defendant's picture was not in the same slot that was used by the police. It was placed differently. On top of that, it was unequivocal that these three people, Griffin, Darren, and Krasner, had not communicated since the incident. Griffin was emphatic that he had nothing to do with these people because Darren, basically, instead of helping him, ran. And Krasner never called the police. She hid in the bedroom. So, to say the least, Griffin was not very pleased with the people that were also involved in this situation for not helping him. So there's been no communication. So the identifications are all independent, all based on what happened. All three identified the defendant. There's absolutely no semblance of any evidence whatsoever that anybody is colluding to take and point to the wrong guy, to make this guy a scapegoat. So if you take a look at the instruction, it gives that basically you're supposed to look at Aaron with caution. Indeed, you look at an accomplice with caution, with their testimony. In this case, assuming for the sake of argument that the jury rejected her testimony completely, my question is, so what? It's not going to change the outcome. You've got three positive identifications. The fact that Aaron kind of maybe ties the bow neatly in some way, shape, or form, showing how he got there and what happened, what the intent was, et cetera, that's all fine and well. But who entered the house? Who became embroiled in the scuffle? Who shot the victim? The defendant. It was positively identified. So even if the instruction had been given, the verdict in this case would not have been any different. So I think that, at least with respect to the jury instruction issue, the error here that was committed is harmless beyond a reasonable doubt. If you take that and consider the same evidence, you carry that over. Basically, with respect to the motion to continue, the defendant, when we take a look at this issue, besides looking at the fact of when the issue concerning the transportation came about, which was in October, from October the 15th, they had 49 days to work out whatever transportation issues they had. But more importantly, I think one has to take a look at the history of the case aside or beyond just simply how many continuances people got. Basically, the defendant moved as of June 18th. He moved all six of his alibi witnesses. So basically, the defendant had from June 18th to December 3rd to secure the attendance of his witnesses. Now, when we look at this particular situation and when we look at the denial of request, there are basically three things. One is diligence. The defendant used diligent efforts to secure the attendance. Two, was the testimony material? Three, was the defendant prejudiced by the denial? Well, in this case, I think this court can answer the propriety of the denial here just based on the first factor. The defendant was not diligent in securing the attendance of his witnesses. Had from June, from when he knew about these people, until December. In fact, when he finally got it continued from October 15th, he got that continued in part because he wanted the same trial judge. And plus, on top of that, that's when the alibi witnesses and the transportation issues first kind of sort of surfaced, I guess one could say. So it was continued December 3rd with a pretrial in November. Well, at the November pretrial, the defendant was ready for trial. One necessarily assumes that there are no transportation issues. One necessarily assumes that the defendant's witnesses, family members, are going to be there. All of a sudden, he walks in on December 3rd, the day of trial, and asks for a continuum. I think that in that particular situation, I think that the court can legitimately consider concerns about his docket, about getting cases tried. I think that the court can consider the fact that in this particular situation, the defendant had almost six months to get his witnesses together, as well as the fact that the defendant asked to be ready for trial in November. So all things considered, on the diligence issue, I don't think the defendant has established the diligence. And the idea that now the defendant wants to do this, the defendant can do this and wants to show continuance, that sounds nice, that sounds all good and well, but the fact of the matter is, at the time, had the defendant shown diligence? And that answer is no. Now, in my brief, I obviously concede. These are alibi witnesses. Yes, indeed, their evidence is maturing. But now we get down to a question of prejudice. We get down to a question of was the defendant prejudiced? Well, the defendant was not because, first off, a witness did testify, albeit not one of the family members, who was supposedly at the birthday party of a sister or whatever, but testified that the defendant was supposed to be out of town during the time that this incident occurred, and this witness had not seen the defendant until early February. So, basically, the heart, the nub of the defendant's alibi defense was presented. The other witnesses would have merely been cumulative to the effect of, yes, he was here on this date, yes, he was here on this date,  But the thing is, once again, one has to look at what the state's evidence is. And in this case, even though they may have presented a question of fact, the fact of the matter remains, would the verdict have been different? Would the situation have been different had the witnesses testified? And the answer to that is no, because you've got three positive identifications made of the defendant and, most importantly, by the victim who was shot, who was engaged in the scuffle with the defendant. That evidence is very compelling, very difficult to overcome, plus, indeed, we all know what the impeachment would have been. The impeachment of these family members would have been the fact that they were family members, that they would say whatever they needed to say in order to help save another family member. So, when you look at the totality of the situation, when you look at the totality of what we have, and what the evidence is, in this particular case, the denial of the motion to continue was not error. The defendant did not establish diligence. The defendant did not establish that he was prejudiced as a result of that. And so, as a result of that, we would strongly urge this Court to affirm the defendant's convictions. With respect to the sentencing issue, I'm simply going to take and refer the Court to my argument in People v. Sally, which basically interpreted the same language, the same statute, because what the defendant, at least from what I... Was there a written finding by the Court in Sally? I'm not sure if there was or not. I'm not sure, but I know what they did is, what the Second District focused on and what my argument focused on was the fact that the defendant seemed to be saying that it took difference with the word victim, a victim. A victim or the victim, right? And the Second District, what they did in interpreting that language in Sally was say, well, hey, look, the legislative use of a victim is clear. You don't have to name the victim. It's just a victim. If it was the victim, then you would have to name the victim. And they felt as though the legislature chose this language. It was broad enough. It made sense. It was within the parameters or was in the prerogative, I should say, of the legislature to do this. As a result, the Sally Court simply determined that there was no ambiguity. The statute is and reads as the statute is and as it reads, period. As a result, they rejected the defendant's arguments, which were pretty much identical to what the defendant has raised here. So the people would simply rely upon the rationale and logic in Sally for this Court to basically affirm the 85%. If there are any questions, I'll be happy to address. Thank you very much, Your Honor. Thank you, Mr. McDonough. Mr. Corrales, Senator Boehme. Yes, Your Honor. On the prejudice with regard to the accomplice witness instruction, I want to make sure it's not missed that the people who were in the house, even Carol Griffin, acknowledged that there was something over the intruder's face. It wasn't an unobstructed view, which you might get that impression without me making mention. KG or Carol Griffin's testimony around 260 to 270 of the trial record acknowledges that there was something over this intruder's face. Christine Krasner, I mean, she's a non-witness. She told the police she ran into her bedroom, hid in the closet until the event was over and never identified any photos and then at trial. She, well, that's the one who came in. Was there a history between the people that identified your client? Did they know him in the past? No. There was a well-established friendship with Aaron Osborne. They had known each other, particularly Carol Griffin had known Aaron for a long time. Aaron herself had only, her testimony was, had only been acquainted with Howard Ellis for a month. I don't know why they would have been able to pick him out of a photo spread because I don't have any record that shows that Aaron had any contact with the occupants of the home, but their identifications could have easily been discounted. KG's, Darren's, and particularly Christine Krasner's. So that makes Aaron's testimony a little bit more important to this case. And I just make a couple points about the continuance argument. This is not the type of case that showed enough of a history that the defendant was trying to perpetually prevent his trial from starting or that there was never going to be any real hope of these family members getting down to Peoria. That's where I think the courts have been more quick to affirm the discretion of the trial judge when it's looking like one's being put over on him. We didn't have enough of a history of that here. Granted, this was not the first request for a continuance, but had a second continuance been granted and the defendant come in on the third trial date and said he wasn't ready, different story. But there really hadn't been a compilation of manipulation by the defendant at the point on December 3rd when the motion to continue the trial was denied. So I just stand on that for our argument that the new trial should be awarded based on the denial of the continuance. If there are no questions, thank you. Thank you both for your argument today. We will take this matter under advisement.